IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-00212-RBJ

TRAVIS COOK,

     Plaintiff,

v.

CITY OF ARVADA, COLORADO,
BRANDON VALDEZ, in his individual capacity,
SCOTT THOMAS, in his individual capacity, and
RYAN CLARK, in his individual capacity,

     Defendants.

---

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

---

This matter is before the Court on two motions: a motion to dismiss filed by defendants Thomas and Clark (ECF No. 37); and a motion to dismiss filed by defendant City of Arvada (ECF No. 39), in which defendant Valdez joins (ECF No. 41).  For the reasons discussed below, both motions are DENIED.  However, the Court imposes sanctions on plaintiff for the conduct underlying the City of Arvada's motion to dismiss.

### I. PROCEDURAL BACKGROUND

This case arises out of events surrounding the arrest of plaintiff Travis Cook on February 11, 2018.  I include the relevant facts to each motion to dismiss below as part of my analysis.  Mr. Cook filed his original complaint on January 27, 2020.  ECF No. 1.  He filed an amended complaint on March 26, 2020.  ECF No. 18.  In that complaint he brings two causes of action:

(1) a claim for excessive force under the Fourth Amendment against defendants Valdez, Thomas, and Clark; and (2) a *Monell* liability claim against defendant City of Arvada. *Id.* at ¶¶93–103.

Defendants Thomas and Clark filed a motion to dismiss the excessive force claim against them on qualified immunity grounds. They filed their motion on May 5, 2020. ECF No. 37. Plaintiff responded on June 5, 2020, ECF No. 50, and defendants Thomas and Clark replied on June 19, 2020, ECF No. 53. Separately, on May 6, 2020 defendant City of Arvada filed a separate motion to dismiss the *Monell* claim against it as a sanction for a purported violation of a protective order by plaintiff's original attorney in this case. ECF No. 39. Two days later, on May 8, 2020, defendant Valdez sought to join City of Arvada's motion to dismiss. ECF No. 41. Mr. Cook responded on May 20, 2020. ECF No. 44. Defendant City of Arvada replied on May 28, 2020. ECF No. 49. Both motions are ripe for review.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.,*

*Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

If the parties rely on materials found outside the four corners of the complaint, the court has the discretion to convert a motion to dismiss to one for summary judgment. If it does so the court must inform the parties and permit them to meet all factual allegations with countervailing evidence. *See* FED. R. CIV. P. 12(d); *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005). The court may consider evidence beyond the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the claims, referred to in the complaint, and if the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

### III. ANALYSIS

**A.  Motion to dismiss by defendants Thomas and Clark**

1. Relevant facts

To analyze defendants' qualified immunity argument, I recite the relevant facts as laid out in plaintiff's First Amended Complaint (ECF No. 18). Officers Thomas and Clark also ask me to consider certain facts they pull from excerpts of Mr. Cook's trial transcript. ECF No. 37 at ¶9. *See also* ECF Nos. 37-1; 37-2; 37-3. They are correct that I may consider documents outside the complaint on a Rule 12(b)(6) motion if they are referred to in the complaint, central to the theory of the complaint, and the authenticity of the document is not in question. *Cty. of Santa Fe*, 311 F.3d at 1035; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). I may also take judicial notice of documents like the trial transcript. *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008). But the operative word in those legal rules is "may." I am not required to consider the trial transcript excerpts, and I elect not to.

For me to properly consider any of that testimony I would have to consider all of it, and the complete trial transcript is not before the Court. Defendants offer testimony of some witnesses in their favor, while plaintiff cites to testimony from other witnesses. ECF No. 37 at ¶¶11–15; ECF No. 50 at 2–5. The weighing of conflicting versions of events involves the type of credibility determinations that our judicial system leaves to the jury. *See Allen v. Wal–Mart Stores, Inc.*, 241 F.3d 1293, 1297 (10th Cir. 2001). Therefore, instead of converting this motion into one for summary judgment on an underdeveloped record—which would also require me to inform the parties and permit them to submit additional evidence—I focus on the four corners of the complaint. I accept plaintiff's well-pleaded allegations as true, as I must at this stage.

On February 11 Mr. Cook and his then-girlfriend, Alex Stumpp, got into an argument at their residence in the basement of Ms. Stumpp's parents' home. ECF No. 18 at ¶17. Victor Stumpp, Alex's father, called the police. Three officers from the Arvada Police Department— Officer Brandon Valdez, Officer Scott Thomas, and Officer Ryan Clark—arrived on scene to investigate. *Id.* at ¶¶18–19. Officer Thomas initially interviewed Mr. Cook while Officer Valdez and Mr. Cook's mother, Karalee Baker, observed. Mr. Cook began trying to tell his side of the story to Officer Valdez, and he then went into the kitchen where Officer Valdez followed him. *Id.* at ¶¶25–29. Subsequently Mr. Cook sat down in a chair in the living room. *Id.* at ¶29.

Officer Valdez called Officers Thomas and Clark over, and the three decided to arrest Mr. Cook. At Officer Valdez's direction the three men surrounded Mr. Cook. Valdez was at Cook's right arm, Clark was at his left arm, and Thomas stood behind him. *Id.* at ¶¶31–32. Then the officers gave contradictory orders—Officers Valdez and Thomas told Mr. Cook to stand up, while Officer Clark told him to sit back down. Officers Valdez and Thomas again told

Mr. Cook to stand up.  *Id.* at ¶¶33–36.  Before Mr. Cook could comply, the three officers went "hands on" and jointly pulled Mr. Cook out of the chair.  *Id.* at ¶37.  Officer Valdez then began punching Mr. Cook in the face.  *Id.* at ¶42.  Photos of Mr. Cook taken the night of the arrest show his face covered in blood, particularly under and around his nose; his lips swollen and bloody; and his left eye puffy, bruised purple and grey, and swollen shut.  *Id.* at ¶5.  Officer Clark then threw Mr. Cook to the floor.  All three officers "piled" on top of Mr. Cook.  *Id.* at ¶¶45–46.  Officer Thomas then used his taser on Mr. Cook for five seconds.  Finally, the officers handcuffed Mr. Cook and placed him under arrest.  *Id.* at ¶¶47–48.

Mr. Cook was charged with assault of Ms. Stumpp, assault of Officer Valdez, resisting arrest, and obstructing a peace officer.  At trial Mr. Cook was acquitted of all charges except obstructing a peace officer.  *Id.* at ¶¶51–52.  Plaintiff's complaint indicates that Officer Valdez claimed Mr. Cook elbowed him in the face.  *Id.* at ¶2.  Mr. Cook maintains that he did not elbow Officer Valdez, that he did not hit him, and that he never resisted arrest.  *Id.* at ¶¶2, 95.

2.  Qualified immunity: Whether plaintiff has alleged a constitutional violation

Officer Thomas and Officer Clark move to dismiss the excessive force charge on qualified immunity grounds.  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  To avoid application of qualified immunity, a plaintiff must (1) allege facts that make out a violation of a constitutional right, and (2) show that the constitutional right was clearly established at the time it was allegedly violated.  *Id.* at 232; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A reviewing court has discretion to address

either prong first.  *Pearson*, 555 U.S. at 236.

In this case, plaintiff contends that the facts alleged would establish that defendants Thomas and Clark used excessive force while arresting him.  The Supreme Court established the test for excessive force in *Graham v. Connor*.  490 U.S. 386, 396 (1989).  Under *Graham*, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* (citation and internal quotation marks omitted).  The three *Graham* factors that courts consider are: (1) the severity of the crime for which the suspect was seized, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing.  *Id.*  Whether a particular use of force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

In his response to the motion to dismiss, plaintiff puts forth two theories of liability for Officers Thomas and Clark.  The first is that Thomas and Clark participated in a coordinated use of force with Officer Valdez.  ECF No. 50 at 7.  Under this theory plaintiff alleges that Officers Thomas and Clark held Mr. Cook's arms while Officer Valdez punched him multiple times, after which Officer Clark pushed Mr. Cook to the ground, all three officers held him down on the ground, and finally Officer Valdez tased him.  The second theory is that Officers Thomas and Clark are liable for failing to intervene when Officer Valdez repeatedly punched Mr. Cook in the face.  ECF No. 50 at 13–14.  I address each theory in turn.

    a.  <u>Coordinated use of force</u>

The Tenth Circuit has recognized that officers may engage in a coordinated use of force

even if each officer uses force differently.  For example, in *Estate of Booker* the court found a coordinated use of force when one officer applied a carotid hold, one handcuffed the plaintiff and applied pressure to his back, one helped handcuff the plaintiff, one applied nunchucks, and one used a taser.  745 F.3d 405, 422 (10th Cir. 2014).  *See also York v. City of Las Cruces*, 523 F.3d 1205, 1211 (10th Cir. 2008) (denying qualified immunity to three officers who respectively executed an arm-bar takedown on plaintiff, put a knee on his back, and tased him).  The Tenth Circuit has also denied qualified immunity for coordinated uses of force even when one of the officers did not directly apply force at all.  In *Weigel v. Broad* the court denied qualified immunity to two officers, one of whom went to his vehicle to warm his hands while the other applied pressure to the plaintiff's torso as he lay on his stomach.  544 F.3d 1143, 1155 (10th Cir. 2008).  *See also Fisher v. City of Las Cruces*, 584 F.3d 888, 892 (10th Cir. 2009) (denying qualified immunity to two officers, one of whom roughly handcuffed plaintiff while the other tried to staunch blood flow from a bullet wound); *Asten v. City of Boulder*, 652 F. Supp. 2d 1188, 1194 (D. Colo. 2009) (denying qualified immunity to officer who tased women through a screen door as well as officer who cut open screen with a knife but did not directly harm plaintiff).

Here the first *Graham* factor, the severity of the crime, weighs against Mr. Cook for determining whether defendants' coordinated use of force was reasonable.  Officers are generally permitted to use some force to exercise an arrest, particularly when the crime for which the suspect is arrested is a violent one.  *See McCoy v. Meyers*, 887 F.3d 1034, 1039–42, 1048–49 (10th Cir. 2018).  Defendants were called to a scene where plaintiff was accused of assaulting his girlfriend, Ms. Stumpp.  Assault is a violent offense, suggesting use of some force is reasonable. In *Morris v. Noe* the Tenth Circuit stated that probable cause to arrest the suspect for assault

weighed only "slightly" against him, but there the alleged assault by plaintiff was against an unrelated man.  672 F.3d 1185, 1195–96 (10th Cir. 2012).  By contrast, here the alleged assault was an incident of domestic violence, which I find to be more serious.

The second *Graham* factor, whether the suspect posed an immediate threat to officer or others' safety, weighs in Mr. Cook's favor and against the reasonableness of defendants' actions. Mr. Cook's alleged assault of Ms. Stumpp suggests that officers could rightly have seen Mr. Cook as a threat initially.  However, the allegations in the complaint, accepted as true at this stage, indicate that by the time defendants Thomas and Clark used force on Mr. Cook, he was compliant with police orders.  At that point Mr. Cook was sitting in a chair surrounded by the three officers.  Officer Thomas had successfully interviewed him, and he had attempted to tell his version of events to Officer Valdez.  He had no weapon on him, and officers found no weapon at the scene.  Nor did Mr. Cook threaten any of the officers or anyone else around. Meanwhile the officers went "hands on" immediately after giving him contradictory orders to both stay seated and stand up.  A reasonable jury could find that the amount of force Thomas and Clark used—throwing Mr. Cook to the ground, piling on top of him, and then tasing him, in tandem with Valdez' punching—was excessive given Cook's non-threatening status and his inability to comply with the orders.

In their motion to dismiss Officers Thomas and Clark analogize to a decision where the Tenth Circuit granted partial qualified immunity despite finding the officers used substantial force.  In that case, *McCoy*, the officers took McCoy to the ground, placed him in a carotid restraint, hit him in the head, shoulders, back, and arms, and then handcuffed his hands and zip-tied his feet together after he lost consciousness.  887 F.3d at 1039–41.  But there the suspect

held people hostage at gunpoint and refused to drop his weapon for 30-45 seconds.  He was also

tackled because police believed that he was reaching for an officer's weapon.  *Id.* at 1039–42.

He thus was a clear threat to both officers and the hostages, which is not true of Mr. Cook.  *See*

*also Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 776 (10th Cir. 1993) (affirming qualified

immunity on summary judgment for officers who wrestled resisting plaintiff to the ground and

used a stun gun on him multiple times while he kicked his feet, flailed his arms, and bit officers).

The third *Graham* factor, whether the suspect actively resists arrest or attempts to flee,

also weights in plaintiff's favor.  Plaintiff alleges that he did not resist arrest at any point.  Nor

did he try to flee the scene or avoid being arrested.  Instead he claims he was sitting in a chair

surrounded by officers, attempting to give his side of the story.  In fact, it appears that he did not

even stand in response to the conflicting orders he received, much less try to get away.  Here too

a reasonable jury could conclude based on his compliance that the force used by Officers

Thomas and Clark was excessive.

Defendants attempt to distinguish the facts here from *McCowan v. Morales*, a decision

that affirmed denial of qualified immunity where the officer used force against a non-resisting,

non-fleeing misdemeanant.  The court based its holding on "(1) a gratuitous use of force [by the

officer] against (2) a fully compliant and subdued misdemeanant arrestee (3) who posed no threat

to anyone."  945 F.3d 1276, 1284 (10th Cir. 2019).  But defendants' argument relies on facts that

are not only beyond the complaint, but that directly contradict plaintiff's allegations, which I am

obligated to take as true at this stage.  The facts alleged here are more similar to *McCowan* than

*McCoy* and thus support denial of qualified immunity.  *See also Morris*, 672 F.3d at 1195–96

(denying qualified immunity to officers who threw plaintiff to the ground, kneed his back, and

handcuffed him, where he "carried no weapon, made no overt threats, and did not get within reach of [defendant]," and was neither resisting arrest nor attempting to flee).

Defendants next argue that the coordination theory of excessive force must fail because of the Tenth Circuit's decision in *Zartner v. Miller*.  There, the court rejected an "aggregation theory" of causation between plaintiff's handcuffing and his wrist injury because the various handcuffing incidents were "in different episodes on different days, at different places, and for different purposes."  760 F. App'x 558, 562 (10th Cir. 2019) (unpublished).  But *Zartner* differs significantly from the facts here.  The three officers used physical force on Mr. Cook in the same place and simultaneously or within seconds of each other.  Defendants also argue against a coordinated use of force because "Thomas and Clark are not alleged to have planned or participated in any way in Valdez' punches."  ECF No. 53 at ¶8.  This argument ignores the fact that defendants need not have participated directly in the punches in order for their uses of force—holding Mr. Cook's arms, pushing him to the ground, lying on top of him, and tasing him—to be coordinated with the force Valdez exercised.  *Booker*, 745 F.3d at 422.

Defendants also argue that the Tenth Circuit has only imposed liability for use of a taser when used without warning on citizens accused of no crime or a minor crime, who are not resisting.  They cite to *Lee v. Tucker*, 904 F.3d 1145, 1150 (10th Cir. 2018) (noting that "use of a Taser without warning on a non-resisting misdemeanant violates the Fourth Amendment's excessive force protections."); *Perea v. Baca*, 817 F.3d 1198, 1201–04 (10th Cir. 2016) (affirming denial of qualified immunity for officers who repeatedly tasered plaintiff after he was subdued, and who was only suspected of riding bicycle through stop sign); and *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 663 (10th Cir. 2010) (affirming denial of qualified immunity

for officer who, without warning, discharged a taser into the back of a woman who was not suspected of any crime).  Here too, however, defendants' argument against qualified immunity relies on their account of plaintiff's resistance.  Defendants claim this case is very similar to *Aldaba v. Pickens*, in which officers were found qualifiedly immune for using a taser on a hospital patient who was refusing life-saving medication.  844 F.3d 870, 876–77 (10th Cir. 2016).  But there the patient was actively, physically resisting both medical care and attempts by officers to restrain him, and it is thus dissimilar from Mr. Cook's conduct in this case.  *Id.*

Finally, I note that in both the decisions defendants cite on excessive force where the Tenth Circuit granted qualified immunity, the court did so at the summary judgment stage—the lower courts denied qualified immunity on motions to dismiss.  *McCoy v. Myers*, No. 12-3160-CM, 2015 WL 751936, at *7 (D. Kan. Feb. 23, 2015); *Aldaba v. Bd. of Marshall Cty. Comm'rs*, No. CIV-12-85-FHS, 2012 WL 1424397, at *2 (Apr. 24, 2012).  The *Graham* factors and the stage of litigation lean towards a denial of qualified immunity here.  I find that plaintiff has sufficiently alleged a constitutional violation under his coordinated use of force theory.

b. <u>Failure to intervene</u>

In addition to his coordinated use of force theory, plaintiff alleges that defendants Thomas and Clark are liable for failing to intervene in Officer Valdez' use of excessive force. The Tenth Circuit has held that an "official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (citations omitted).  In *Vondrak* the Tenth Circuit adopted the Second Circuit's explanation of the duty to intervene:

> [A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in

11

their presence.  An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official.  In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.  Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

*Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Officers Thomas and Clark observed Officer Valdez hitting Mr. Cook in the face numerous times.  They should have known that Valdez was using excessive force.  My analysis under *Graham* above is equally applicable here.  The *Graham* factors suggest that Officer Valdez committed a constitutional violation at this stage: a jury could find that punching Mr. Cook repeatedly when he was sitting down surrounded by standing officers, not in possession of a weapon, not threatening anyone, not resisting arrest, and not attempting to flee, was excessive.  This use of force is particularly concerning because it is not the type typically used by officers to subdue a suspect and handcuff him or her to effect arrest.  It should have been evident to Thomas and Clark that Valdez's conduct was unconstitutional, and that they needed to intervene.  Defendants assert they had insufficient time to intervene because Valdez punched Cook "without provocation."  ECF No. 53 at ¶9.  While that may have been true for the initial hit, defendants had a "a realistic opportunity to intervene" in the subsequent hits.  *Vondrak*, 535 F.3d at 1210.  A reasonable jury could find that at least some of those punches could have been prevented had Thomas and Clark not failed to intervene.

Defendants rely on several cases to argue that plaintiff cannot proceed on a failure to

intervene theory at this stage.  Those decisions are easily distinguished, however.  In *Jones v. Norton* the plaintiff alleged that one officer failed to intervene when another officer shot a man. 809 F.3d 564, 576 (10th Cir. 2015).  But the court granted qualified immunity without analyzing the alleged failure to intervene because it determined the man had shot himself, rather than being shot by the officer.  And while *Lynch v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma* suggests that a plaintiff must explicitly plead failure to intervene in her complaint, that case is non-precedential, and such a requirement is absent from binding Tenth Circuit cases like *Mick* and *Vondrak*.  786 F. App'x 774, 783 (10th Cir. 2019) (unpublished).  The Court concludes that plaintiff has sufficiently alleged that Officers Thomas and Clark violated his constitutional rights by failing to intervene when Officer Valdez repeatedly punched him.

> 3.   Qualified immunity: Whether the law was clearly established

For Mr. Cook to survive a motion to dismiss on qualified immunity grounds, the law pertaining to his constitutional violation—excessive force—must have been clearly established at the time defendants used force against him.  A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he or she was doing violates that right.  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotations omitted).  In this circuit a right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains."  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).

Clearly established law should not be defined at a high level of generality.  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (internal

quotations omitted).  "Although a plaintiff need not identify a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (unpublished) (citing *Mullenix*, 577 U.S. at 12) (internal quotations omitted); *see also White*, 137 S. Ct. at 551.  The clearly established standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

The Tenth Circuit has repeatedly counseled, however, that "[w]e cannot find qualified immunity whenever we have a new fact pattern." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).  Furthermore, a defendant asserting qualified immunity on a motion to dismiss is subject to a more challenging standard of review than applies on summary judgment. *Thomas*, 765 F.3d at 1194.  In the Tenth Circuit, a qualified immunity analysis for excessive force involves something of a "sliding scale": "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey*, 509 F.3d at 1284 (citation omitted).  Whether an individual has been subdued from the perspective of a reasonable officer depends on the officer having sufficient time to recognize that the suspect no longer poses a threat and to "react to the changed circumstances." *Fancher v. Barrientos*, 723 F.3d 1191, 1201 (10th Cir. 2013).

I first address whether defendants' coordinated use of force against Mr. Cook violated clearly established law.  As plaintiff presents the facts in his complaint, Officers Thomas and Clark grabbed plaintiff, pushed him to the ground, lay on top of him, and tased him while he was non-resistant and did not pose a significant threat.  I find that at the time Mr. Cook was arrested, Tenth Circuit precedent on excessive force had clearly established that such conduct was

unconstitutional.  Numerous cases indicated that officers may exercise only limited force to arrest a suspect who is not fleeing or resisting arrest and who does not pose a threat.  *E.g. Morris*, 672 F.3d at 1196–98 (10th Cir. 2012); *Cavanaugh*, 625 F.3d at 666–67; *Casey*, 509 F.3d at 1283–85.

The Tenth Circuit has also come to this conclusion explicitly.  In *McCoy* the Tenth Circuit said, "*Dixon*, *Casey*, and *Weigel* clearly establish that the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued."  887 F.3d at 1052.  In *Morris*, an even earlier case, the court found that the right was clearly established under *Graham* and *Casey* when an officer used force against a misdemeanant who posed no threat, did not resist, and did not attempt to flee.  672 F.3d at 1198.  *See also Rhoads v. Miller*, 352 F. App'x 289, 292 (10th Cir. 2009) (unpublished) (noting that if plaintiff's allegations of being beaten "without resistance or provocation" were believed by a jury, they would be sufficient to support a claim violation of clearly established law under *Graham* and Tenth Circuit precedent) (citing to *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992); *Austin v. Hamilton*, 945 F.2d 1155, 1158 (10th Cir. 1991), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995); *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991); and *York*, 523 F.3d at 1209).

Officers Thomas and Clark argue that the law was not clearly established that the amount of force they used was excessive where a suspect poses a significant threat, actively resists arrest, or attempts to flee.  They first point to *McCoy*, where the court found that the force officers used before the plaintiff was subdued, which included taking him down, striking him, and using a carotid hold to render him unconscious, did not violate clearly established law.  887 F.3d at

1048–49.  But while McCoy did not resist arrest, he did have a gun, and an officer also believed

he was lunging for a police weapon—neither of which were the case for Mr. Cook.  *Id.*

Similarly, the court granted qualified immunity in *Bailey v. Twomey* to an officer who grabbed a

woman's wrist, pulled her, and hit her in the chest so that she fell on the floor, because the

officer thought the woman was trying to disarm him when she brushed up against his back.  791

F. App'x 724, 726–27, 730–31 (10th Cir. 2019) (unpublished).  By contrast, Mr. Cook never

tried to disarm any officer here, nor did any officer reasonably believe he was trying to.

 To argue that Officer Thomas' use of the taser did not violate clearly established law,

defendants cite *Wilson v. City of Lafayette* in which the Tenth Circuit held that an officer's

Tasing a man who ran from police and reached multiple times for his right pocket did not violate

clearly established law.  510 F. App'x 775, 776–79 (10th Cir. 2013) (unpublished).  This case is

not on point because it requires the Court to assume that defendants' version of events are true,

i.e., that Mr. Cook resisted arrest and posed a threat to officers.  Officers Thomas and Clark also

analogize to *Aldaba* to argue that no case would have informed them that their conduct,

particularly Thomas' use of the taser, constituted excessive force.  After its decision in *Mullenix*

the Supreme Court reversed the Tenth Circuit in *Aldaba*, which had affirmed the lower court's

denial of qualified immunity.  *Pickens v. Aldaba*, 577 U.S. 972 (2015).  Officers pushed a patient

up against a wall, tased him, and restrained him while a nurse injected two medications into him

that led to his death.  *Aldaba*, 844 F.3d at 875–76.  The Tenth Circuit reasoned that there was "no

case presenting a similar situation" that would have put the officers on notice that their actions

would constitute excessive force.  *Id.* at 879.

 I disagree that *Aldaba* is analogous to the facts here.  In *Aldaba* the patient was agitated

and anxious, and he disconnected his IV and oxygen tubes.  When the officers encountered him trying to leave the building, they tried to calm him down and gave him warnings that they would use a taser if he did not comply.  *Id.* at 785–76.  In granting qualified immunity on remand, the Tenth Circuit emphasized that officers were assisting the patient's medical providers so they could provide life-saving medical care, and that they only tased him after other efforts to calm him had failed.  *Id.* at 879.  The court reasoned that case law "would not apprise every objectively reasonable officer that restraining [plaintiff] for medical treatment, as here, would amount to excessive force. . . ."  *Id.* at 877.  By contrast, here officers used force to effectuate an arrest, not medical treatment, and none of the patient's non-compliance is reflected in Mr. Cook's complaint.  Furthermore, the Tenth Circuit in *Aldaba* granted qualified immunity on the officers' motion for summary judgment, a later stage of litigation.  The district court denied qualified immunity on their earlier motion to dismiss.  *Aldaba v. Bd. of Marshall Cty. Comm'rs*, No. CIV-12-85-FHS, 2012 WL 1424397, at *2 (Apr. 24, 2012).

In addition to their joint use of force, Officers Thomas and Clark may be liable for failing to intervene in Officer Valdez' use of force.  It is clearly established in the Tenth Circuit that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Vondrak*, 535 F.3d at 1210; *see also Mick*, 76 F.3d at 1136 (collecting cases).  Officer Valdez's punching Mr. Cook repeatedly without provocation, as alleged in the complaint, is the type of "obviously egregious" conduct that is well-established as excessive force.  *Casey*, 509 F.3d at 1284.  Then-existing precedent would have apprised every objectively reasonable officer that failing to intervene in this beating would likewise violate Mr. Cook's constitutional rights.

I find that plaintiff has sufficiently alleged a constitutional violation and established that the law clearly established that the alleged uses of force violated his rights.  If defendants' contentions about plaintiff's behavior the night of the arrest are borne out through discovery, they may well be entitled to qualified immunity on summary judgment.  But to grant qualified immunity now would be premature.  The Court therefore DENIES Thomas and Clark's motion to dismiss.

**B.**   **Motion to dismiss by defendant City of Arvada and joined by defendant Valdez**

In addition to his excessive force claim, Mr. Cook brings a *Monell* claim against the City of Arvada.  ECF No. 18 at ¶¶98–103.  The thrust of Mr. Cook's allegations is that the City's customs, policies, and practices concerning the use of force were a proximate cause of the harm he suffered.  Plaintiff also alleges that the City accepted, condoned, and covered up its officers' uses of excessive force, particularly Officer Valdez's use of force, and that it inadequately trained, supervised, and disciplined its officers.  *Id.*

Defendant City of Arvada moves for dismissal with prejudice of the *Monell* claim against it as sanctions for what it contends was a willful violation of a state court protective order by plaintiff's original attorney on this case, Adam Frank.  ECF No. 39 at 1–2.  Defendant Valdez joins the City's motion.  ECF No. 41 at 1–2.  In addressing this motion to dismiss, I first lay out the sequence of events.  I next address the motion as to the City of Arvada and then as to Officer Valdez.  I ultimately deny the motion as to both parties.  Instead, as a sanction I prohibit plaintiff from using any of the information contained in the documents under the protective order.

1.   Relevant facts

Attorney Adam Frank represented Mr. Cook in his criminal case that arose out of the

arrest underlying this case (District Court, Jefferson County – Case No. 2018CR610).  ECF No.

29 at ¶6.  Mr. Frank served the City with four subpoenas duces tecum seeking the individual

defendants' personnel files and the City's internal investigation files.  The City objected to

production of the information and sought to quash the subpoenas.  ECF No. 39 at 2–3.  The

Jefferson County District Court held a hearing on June 20, 2018 in which it partly quashed the

subpoenas, finding that some of the information requested was irrelevant to the criminal case

because it involved officers who were not involved in Mr. Cook's arrest.  *Id.* at 3.  The court then

conducted an *in camera* review of the remaining documents.  It subsequently ordered the City to

disclose the documents under a protective order that the City was to draft.  On June 27, 2018 the

court issued the protective order, which stated in relevant part:

> a. Any information contained in the documents disclosed to the Defense shall be used
> only for the purposes of this particular case #2018CR610 and no other;
>
> b. The Defense shall be prohibited from revealing the disclosed information to others,
> with the exception of the Defendant, attorneys of record on this case or to any experts as
> designated with the Court, by any means including, but not limited to, transmission of the
> content of the documents, in whole or in part, via voice, photocopy, telephone, facsimile,
> internet discussion forum, or "listserv", electronic mail, social media, or any other form
> of communication whatsoever.

ECF No. 29-1.  The protective order had no end date, and thus it is still in effect today.  *Id.*

On August 2, 2018, at another hearing for plaintiff's criminal case, the Jefferson County

District Court judge confirmed with plaintiff's counsel that the materials disclosed under the

protective order were only to be used in the criminal case.  Mr. Frank responded "absolutely."

ECF No. 39-1 at 8:4-11.  The judge then said, "it's starting to feel like this is starting to go

towards a civil discovery process for you." *Id.* at 8:14-16.  Mr. Frank assured the court that "this

has nothing to do with setting up a civil case," and that these types of documents were much

easier to obtain through civil discovery.  *Id.* at 8:17-21.

Despite these reassurances, information contained in the documents covered by the protective order got out.  On January 27, 2020 Mr. Frank filed a complaint and jury demand for this case that apparently included allegations based on information in the protected documents. ECFs No. 1; 44-1 at ¶¶4–5.  The City contends that "Plaintiff used the information produced in response to the [subpoenas] to form a civil complaint against the Defendants, which he immediately forwarded to multiple media outlets to ensure that the confidential information be made public."  ECF No. 39 at 4–5.  Defendants characterize plaintiff's actions as "willful, intentional, persistent, and contemptuous."  *Id.*

By contrast, plaintiff asserts that any disclosure by him (or more accurately, by his former attorney Mr. Frank) was unintentional.  ECF No. 44 at 2.  In his affidavit attached to plaintiff's response, Mr. Frank states that he "inadvertently" violated the protective order by including certain allegations in the complaint, and that he filed an amended complaint on March 26, 2020 that, to his understanding, removed the allegations.  ECF No. 44-1 at ¶¶5, 7.  He also declared that while he did speak to the press about the complaint's "general allegations," he "did not discuss Officer Valdez' history and did not say anything specific to the press that violated the protective order."  *Id.* at ¶6.  Defendant counters that Mr. Frank failed to dispute that he sent the complaint itself to media outlets.  ECF No. 49 at 1.

On April 6, 2020, a few days after filing the amended complaint on behalf of plaintiff, Mr. Frank withdrew as plaintiff's counsel.  He was replaced by Erica Grossman.  Neither Ms. Grossman nor her colleagues representing Mr. Cook have read the original complaint, and they have not discussed or seen the details of the confidential information.  ECF No. 44 at 3.  Plaintiff

also indicates—now through his new counsel, Erica Grossman—that the allegations in his complaint were based on testimony elicited during plaintiff's criminal trial, and thus they were not directly based on the protected documents. ECF No. 40 at 2. Plaintiff's position is that "once material was testified about and/or admitted in public criminal proceedings, it is no longer covered by the protective order." *Id.* He also notes that defendants did not seek an order sealing the trial or hearing transcripts. *Id.*

After the substitution of counsel, the parties also litigated redactions to the amended complaint. Defendants moved to restrict public access to plaintiff's original complaint (ECF No. 1), amended complaint (ECF No. 18), and the redlined version of the original complaint in which Mr. Frank indicated which paragraphs he removed (ECF No. 19-1). ECF No. 29. Specifically, defendants argued that various paragraphs in all three documents used and disclosed information that was included in documents under the protective order. *Id.* at ¶¶8, 11. Through his new counsel, Ms. Grossman, plaintiff stipulated to redaction of the paragraphs in the original complaint and the redline version. ECF No. 31. Plaintiff contested defendants' redaction of additional paragraphs in the amended complaint, because—as noted above—his position is that these allegations are based on testimony that came out at the criminal trial. ECF No. 40.

2.  The motion as to the City of Arvada

FED. R. CIV. P. 16(f) provides for sanctions, stating that "[o]n motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." The court also has inherent authority to impose sanctions. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly

and expeditious disposition of cases. That authority includes the ability to fashion an appropriate

sanction for conduct which abuses the judicial process.") (internal quotation marks and citations

omitted).  The trial court has discretion to determine the appropriate sanction.  *Id.*  The court may

make adverse evidentiary rulings, hold a party in contempt, or impose fees and costs.  A court

may also dismiss an action upon motion by a defendant for a plaintiff's failure to comply with a

court order.  *Id.*; FED. R. CIV. P. 41 ("If the plaintiff fails to prosecute or to comply with these

rules or a court order, a defendant may move to dismiss the action or any claim against it.").

With respect to the sanction of dismissal, however, the legal system has a strong

preference for deciding cases on the merits.  Dismissal is a "weapon of last, rather than first,

resort."  *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).  As a result, the Tenth

Circuit has consistently held that the sanction of dismissal should "be predicated on a finding of

bad faith, willfulness, or some fault of petitioner rather than inability to comply."  *Archibeque v.*

*Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (internal quotation

marks and citation omitted) (discussing dismissal for discovery violation).  Furthermore, "[i]f a

judge intends to order a dismissal or default judgment because of discovery violations, the judge

should do so only if the judge is impressed to do so by evidence which is clear and convincing."

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 108 (D. Colo. 1996).

The Tenth Circuit's decision in *Ehrenhaus* established the framework for determining

whether dismissal is the appropriate sanction.  It directed courts to consider the following

factors: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with

the judicial process; (3) the litigant's culpability; (4) whether the court gave the party advance

warning that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of

lesser sanctions. *Ehrenhaus*, 965 F.2d at 921. The factors are not a "rigid test" but instead criteria for district courts to evaluate on the record prior to dismissal. *Id.* Importantly, the *Ehrenhaus* court went on to say that "[o]nly when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id.* (citation and quotation omitted). A court may dismiss "if, after considering all the relevant factors, it concludes that dismissal *alone* would satisfy the interests of justice." *Id.* at 918 (emphasis added). The *Ehrenhaus* also court noted that "[i]n many cases, a lesser sanction will deter the errant party from further misconduct." *Id.* at 920.

Here, the first *Ehrenhaus* factor weighs somewhat towards dismissal. The City argues it has been prejudiced, and the jury pool has been tainted by the improper disclosure of confidential information to media outlets that printed articles about the City's police force. It is possible, perhaps even likely, that potential jurors have read the articles and formed biases against the City of Arvada as a result of the leaked information. However, those articles are nearly two years old, and this Court pulls potential jurors from an area much broader than Arvada where those articles are most likely to be read and to engender bias. Thus, the tainting of the jury pool is not as severe as it would be in local cases such as a high-profile murder where the entire jurisdiction will likely have heard about the case. Any potential jury bias could also be mitigated through voir dire. Defendant also claims that by disclosing the information, plaintiff forced the City "to defend this litigation." ECF No. 39 at 7. The Court is unsure what this argument means. To the extent defendant is referring to the entirety of this lawsuit, the Court disagrees. Plaintiff could have filed a *Monell* claim against the City with far fewer facts than those alleged based on the protected information. However, the Court does acknowledge that defendant has suffered

prejudice in expending resources to litigate this motion to dismiss.

More concerning to the Court are the damage between the City and its employees regarding the protection of confidential information, and the damage between the City's police force and the population it serves.  Though one case plaintiff cites suggests that courts should only analyze prejudice *within* a lawsuit, *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 (6th Cir. 1994), there are other cases that consider prejudice to a defendant generally.  *E.g. Hand v. Walnut Valley Sailing Club*, No. 10-1296-SAC, 2011 WL 3102491, at *3 (D. Kan. July 20, 2011), *aff'd*, 475 F. App'x 277 (10th Cir. 2012) (unpublished); *Assassination Archives & Research Ctr. v. C.I.A.*, 48 F. Supp. 2d 1, 10 (D.D.C. 1999).  Police forces and municipal governments depend on strong relations internally and with the public in order to serve their constituents.  Breaches of that trust can put both the public and police officials in danger.

The second *Ehrenhaus* factor, the amount of interference with the judicial process, weighs towards dismissal.  Whether intentional or not, disclosure of information covered by a protective order to the media, and thus the broader public, constitutes a serious subversion of the judicial process and judicial authority.  Defendant is correct in warning that such a breach could cause future parties to have diminished confidence in the efficacy of protective orders.  That, in turn, will make the discovery process more challenging and litigious.  In addition, improper disclosures have already created an additional burden in this case—plaintiff has had to file an amended complaint, and the parties have expended substantial money, paper, and time (both of their own and of this Court's) litigating further this motion to dismiss.

As for the third *Ehrenhaus* factor, the litigant's culpability, the Court finds that it does not have sufficient information to determine whether it weighs for or against dismissal.  On the

one hand, defendant contends that the disclosure was willful, in addition to being "intentional, persistent, and contemptuous." ECF No. 39 at 5. It argues that plaintiff is "entirely culpable" because he allowed his agent, Mr. Frank, to disclose the confidential information in the complaint and to the media. *Id.* at 9. On the other hand, Mr. Frank's sworn affidavit asserts that any disclosure was inadvertent. and that his direct statements to the press did not violate the protective order, though surely the complaint he sent the press did. ECF No. 44-1. This Court is reluctant to assume, as defendant's argument implies, that Mr. Frank is further subverting judicial authority by lying in a sworn affidavit. His revision of the complaint and his withdrawal are too ambiguous to be read as either implicating or exonerating him.

An attorney's acts will reflect on his client if they are a tactical decision and if noncompliance with a court order is intentional. *Smith v. United States*, 834 F.2d 166, 171 (10th Cir. 1987). But neither party has presented evidence to the Court as to whether Mr. Cook himself had any knowledge of Mr. Frank's plan to use the protected information in his civil complaint or disclose it to the media. I do not know whether Mr. Cook understood that the filing and publicization of his civil case in this manner violated the protective order. Currently plaintiff contends that he believed the information disclosed to the press became public when it was elicited through testimony at his criminal trial. ECF No. 40 at 2. On the scant record before me, therefore, I cannot conclusively determine that plaintiff is culpable, as is required for dismissal.

The fourth *Ehrenhaus* factor, whether a court gave warning that dismissal could be a sanction for noncompliance, weighs against dismissing this case. The Tenth Circuit noted in dicta in *In re Hopkins* that "such a warning is not always necessary . . . ." 162 F.3d 1173 (10th Cir. 1998) (unpublished). However, it also stated that a warning "is a factor which we consider

in determining whether the district court abused its discretion," and in fact it reversed dismissal of plaintiff's case by the lower court. *Id.* Here, no warning was ever given. This is in part because the court that issued the protective order is distinct from the one addressing the fallout of its violation. But it is also because plaintiff violated the court order once, not repeatedly, as is often the case where warnings are discussed. *E.g. Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) (dismissing case after plaintiff failed three times to produce discovery, violating court orders twice). Defendant is correct that at a minimum plaintiff should have known violating a protection order would subject him to sanctions. And it will. But the lack of warning suggests that a sanction less harsh than dismissal would be more appropriate.

The fifth and final *Ehrenhaus* factor, the efficacy of lesser sanctions, also weighs against dismissal. Defendant argues that no sanction besides dismissal would "adequately admonish" plaintiff, deter similar conduct, "restore respect for the authority of this state's courts," repair damage to the discovery process, and reduce prejudice to defendants. ECF No. 39 at 10. I cannot agree. Firstly, as discussed above I am unable to find by clear and convincing evidence that plaintiff's violation of the court order resulted from "bad faith, willfulness, or some fault of petitioner." *Archibeque*, 70 F.3d at 1174. Secondly, I believe a lesser sanction would achieve the Court's goals. An evidentiary ruling prohibiting plaintiff from using any of the confidential information covered by the protective order in this case, or in any other, should sufficiently admonish plaintiff and deter future bad conduct by both him and others in his position.

In deciding what sanctions were appropriate for plaintiffs who willfully perjured themselves while giving deposition testimony in a different case, this district wrote "[t]o properly deter both these Plaintiffs and other litigants who might contemplate similar untruthfulness, the

Court must ensure that any sanction leaves the Plaintiffs in a position at least somewhat worse than they would have been in had they testified truthfully." *Pappas v. Frank Azar & Assocs., P.C.*, No. 06-CV-01024-MSK-BNB, 2007 WL 2683549, at *13 (D. Colo. Sept. 7, 2007).  I aim to do the same here.  The sanction I impose will leave plaintiff worse off than if his attorney had not disclosed the protected information.  Had the protective order been followed plaintiff would likely have sought and received the same information through discovery in this case, and he could have used it to vindicate his *Monell* claim.  Now plaintiff will be unable to do so.  His likelihood of success on the merits of his case against the City is diminished.

My review of sanctions decisions from this jurisdiction and others confirms that a prohibition on use of any protected information, not dismissal, is the correct sanction here.  The three most analogous cases that defendant cites have important factual distinctions from this one.  In *Hand*, the Tenth Circuit affirmed the lower court's dismissal of a case brought by a plaintiff who published information from a confidential mediation.  475 F. App'x at 279.  But there the court emphasized that Mr. Hand revealed extensive, prejudicial details about a mediation to potential witnesses in the case, which resulted in a greater degree of prejudice than the potential for tainting a jury pool against the City of Arvada.  The plaintiff also unequivocally admitted that his disclosure was intentional, unlike here.  *Id.*

The Seventh Circuit affirmed dismissal of a plaintiff's case in *Salmeron v. Enter. Recovery Sys., Inc.* after the attorney leaked a confidential document procured through discovery to his client, another attorney, and a local newspaper.  579 F.3d 787, 789 (7th Cir. 2009).  In contrast to here, however, the attorney had also engaged in a "virtually unbroken pattern of dilatory and irresponsible conduct" by missing deadlines and failing to appear in court.  *Id.* at

787.  In addition, the court explicitly found willfulness based on the attorney's contradictory excuses for his behavior: he initially denied leaking the information, then backtracked and said he exercised "bad judgment," and finally claimed he had misplaced the document's cover letter stating it was confidential.  *Id.* at 794–95.

Finally, in *Assassination Archives*, the court dismissed a case against the CIA because an attorney, Mr. Zaid, disclosed information received through a confidentiality agreement on three occasions: once to General Counsel of a separate organization not party to the original lawsuit or to the confidentiality agreement, once by Mr. Zaid through a FOIA request, and once by plaintiff in the D.D.C. case through a FOIA request.  48 F. Supp. 2d at 3–5.  The court noted that "this case presents a scenario in which deterrence and punishment are particularly necessary" because warnings to the attorney about the first set of disclosures had no effect—he continued to violate the confidentiality agreement.  *Id.* at 10–11.  Here Mr. Frank did not continue to disclose, but instead redacted the complaint and withdrew from the case.  In addition, the D.C. court found that no other sanction would be appropriate because the merits of the case—a FOIA lawsuit— were "substantially intertwined" with the improper disclosure of the very information the lawsuit sought to uncover.  *Id.*  By contrast, the information covered by the protective order here is not itself the purpose of the lawsuit, and the sanctions I am imposing will go much farther in punishing plaintiff than any alternatives like attorney's fees could have in *Salmeron*.

There is no doubt that the protective order violation in this case is more serious than many others.  *E.g. Digital Advert. Displays, Inc. v. Newforth Partners, LLC*, No. 12-CV-00682-WJM-MEH, 2014 WL 128010 (D. Colo. Jan. 10, 2014) (ordering fees and costs when counsel filed documents on public docket that should have been marked confidential per protective

order); *Valdez-Castillo v. Busch Entm't Corp.*, No. 06-20772-CIV, 2008 WL 4999175, at \*2 (S.D. Fla. Nov. 20, 2008) (imposing no sanction where plaintiff's counsel sent confidential document to newspaper and attached it to motion on public docket, because document was not marked as confidential); *Millett v. Ford Motor Credit Co.*, No. CIV.A. 04-2450-CM, 2006 WL 1050001, at \*2 (D. Kan. Apr. 20, 2006) (refusing to impose sanctions where defendants violated protective order by filing motion with confidential exhibits not under seal).  But in most decisions where a court found dismissal appropriate there was repeated willful misconduct, and the court often gave a warning.  *E.g. Lee*, 638 F.3d at 1321; *Raiser v. Brigham Young Univ.*, 297 F. App'x 750, 751–52 (10th Cir. 2008) (unpublished) (affirming dismissal where plaintiff refused to attend deposition or appear at pre-trial conference, and court warned his case would be dismissed for noncompliance); *Rocky Mountain Tech. Eng'g Co., LLC v. Hutchens Indus., Inc.*, 263 F. App'x 895, 898 (Fed. Cir. 2008) (unpublished) (holding dismissal appropriate where plaintiff delayed a year in getting new counsel and consistently missed deadlines, and court warned of dismissal); *Anaeme v. FHP of New Mexico*, 201 F.3d 447 (10th Cir. 1999) (affirming dismissal where plaintiff persistently refused to appear at depositions and hearings or respond to discovery, and court gave warning).

Furthermore, courts have found sanctions other than dismissal appropriate even in instances of serious protective order violations like this one.  *E.g. S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1275 (10th Cir. 2010) (ordering return of confidential documents and compliance with protective order as remedy for S.E.C. improperly sending documents to the IRS); *Mann v. Univ. of Cincinnati*, 114 F.3d 1188 (6th Cir. 1997) (unpublished) (prohibiting use of records as evidence and imposing fine and costs where defendants improperly accessed

plaintiff's confidential medical records before plaintiff had chance to challenge subpoena); *Coleman*, 23 F.3d at 1094 (reversing dismissal as too harsh where plaintiffs improperly used protected information about HIV-positive donor to find donor and sue them for HIV blood transfusion); *Dorsett v. Cty. of Nassau*, No. CV 10-01258 ADS, 2012 WL 2076911, at *11 (E.D.N.Y. June 7, 2012) (holding defendant's employee in contempt for making statements to press about content of police internal affairs report under protective order); *Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1435 (N.D. Ill. 1995), *aff'd*, 134 F.3d 374 (7th Cir. 1998) (holding attorney in contempt for repeatedly violating protective order by disclosing confidential material to New York Times reporter, in brief to Seventh Circuit, and in letter to counsel for intervenors).

Judges in this district have also typically imposed lesser sanctions for grave violations of court orders. *E.g. Live Face On Web, LLC v. Integrity Sols. Grp., Inc.*, 421 F. Supp. 3d 1051, 1078–79 (D. Colo. 2019) (granting fees and costs to plaintiff where defendant violated protective order by providing confidential files to counsel in related cases on multiple occasions and denied such violations for nearly a year); *McFadden v. Meeker Hous. Auth.*, No. 16-CV-2304-WJM-GPG, 2018 WL 3348882, at *6 (D. Colo. July 9, 2018) (determining evidentiary exclusion was more appropriate than default judgment where defendants offered false testimony and a serious lack of discovery diligence); *Kaufman v. Am. Family Mut. Ins. Co.*, No. CIV.A. 05-CV-02311WD, 2008 WL 1806195, at *5 (D. Colo. Apr. 21, 2008) (imposing fees and costs and considering holding counsel in contempt where plaintiff's counsel used confidential files to contact thirteen potential claimants about lawsuit); *Pappas*, 2007 WL 2683549, at *12 (finding dismissal too harsh and instead prohibiting plaintiff from recovering certain losses where

plaintiff perjured herself twice during deposition).

All of that being said, I notify the parties and Mr. Frank that I am sufficiently troubled by what I consider to be misrepresentation to the district judge in state court and the improper publication of information obtained upon assurances that its confidentiality would be maintained that I seriously considered dismissing the claim against the City and sending a copy of my order to the Office of Attorney Regulation Counsel.  Based on extensive research by a law clerk and further reflection I have instead concluded that dismissal is not the appropriate sanction in this case given the facts before the Court.  A lesser sanction can balance the judicial system's preference for deciding cases on the merits with a recognition of the severity of the violation. But I hope that a lesson has been learned very clearly.  This is not the way to practice law.  This is not what it means to be a professional.  This is not okay.

Defendant City of Arvada's motion to dismiss is therefore DENIED.  Instead, the Court orders that any information contained in the confidential documents turned over by the City under the state court's protective order may not be used by plaintiff, for any purpose, in this lawsuit or in any other lawsuit.  That holds true even if plaintiff has obtained or obtains the same information through other means.  I expect plaintiff and plaintiff's counsel to scrupulously avoid any use of the information, and I will be quite disappointed if the Court is called upon to resolve any dispute as to what can be used and what cannot.  The misconduct has nothing to do with plaintiff's present counsel.  Nevertheless, any attempt by plaintiff to subvert this ruling, or any subsequent violation of any order of this Court by plaintiff, will be met with immediate dismissal with prejudice of his claim against the City.

3.  The motion as to Officer Valdez

Defendant Valdez joins the City of Arvada's motion to dismiss as sanctions for plaintiff's violation of the protective order.  ECF No. 41.  He did not move to dismiss separately on other grounds, such as qualified immunity.  Officer Valdez argues that the motion "applies in some ways with even greater vigor" to him because some of the information in the internal affairs files related specifically to him.  *Id.* at 2.  Officer Valdez does not make any independent argument about the prejudice he has faced, or why dismissal of his claim—an excessive force claim under the Fourth Amendment, based on his alleged beating of Mr. Cook during the arrest—is an appropriate sanction.  He writes only that plaintiff's "actions have had a negative and adverse impact on Defendant Valdez and his interaction with the public, particularly in his efforts to continue to perform his duties as a police officer."  *Id.*

The Court finds that dismissal of plaintiff's excessive force claim against Officer Valdez is not an appropriate sanction.  For the reasons outlined above in my analysis of the City's motion to dismiss, a lesser sanction can achieve the Court's goals while properly punishing plaintiff for his former attorney's conduct.  Furthermore, the information contained in the protected documents is largely unrelated to Mr. Cook's claim against Officer Valdez.  Plaintiff's ability to succeed on his excessive force theory turns on Officer Valdez' actions the night of the arrest, not on his track record as a police officer or any actions the City of Arvada took with respect to him or other officers.  I therefore DENY the motion to dismiss filed by the City as to Officer Valdez.  However, I permit defendant Valdez to benefit from the same sanction I fashioned for the City above: plaintiff may not use any of the information contained in the documents covered by the protective order against Officer Valdez in this lawsuit or any other.

**ORDER**

1. The motion to dismiss filed by defendants Thomas and Clark (ECF No. 37) is DENIED.

2. The motion to dismiss filed by defendant City of Arvada (ECF No. 39), and joined by defendant Valdez (ECF No. 41), is DENIED.

3. The court imposes the following sanction: Plaintiff may not use, for any purpose, in this lawsuit or any other, any of the information contained in the documents produced under the protective order in Jefferson County District Court Case No. 2018CR610.  This includes information contained in those documents but sourced through other means.

   DATED this 25th day of January, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge